[Cite as *State v. Harvey*, 2025-Ohio-5141.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                 No. 114869

    v.                                  :

JOEL HARLEY, SR.,                        :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 13, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-687564-A

---

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Carson M. Strang and Brandon Piteo, Assistant Prosecuting Attorneys, *for appellee.*

Joseph V. Pagano, *for appellant.*

MICHAEL JOHN RYAN, J.:

{¶ 1} In this appeal, defendant-appellant Joel Harley, Sr. ("Harley") challenges his guilty plea to corrupting another with drugs, a felony of the second degree. After a thorough review of the facts and pertinent law, we affirm.

**Factual and Procedural History**

{¶ 2} In January 2024, Harley and codefendant, Angela Miserendino ("Angela"), were indicted on one count each of involuntary manslaughter, corrupting another with drugs, and endangering children. The charges related to the June 2022 fatal overdose of Charles Miserendino ("Charles"), Angela's brother. Harley was additionally charged with one count of having weapons while under disability.

{¶ 3} The record reveals that Harley was Angela's drug dealer. On the occasion at hand, Harley sold drugs to Angela and Angela and Charles went to a hotel room to use the drugs. Charles died shortly thereafter from acute fentanyl intoxication. The evidence against Harley showed that he was near the hotel where Angela and Charles were at the time and he communicated with Angela right up until Charles died.

{¶ 4} After being indicted, Harley was declared indigent and counsel was appointed for him. In January 2024, defense counsel filed a motion for discovery, and the State responded in February 2024, and requested discovery from Harley. From February 2024 through July 2024, numerous pretrial hearings were continued at the behest of the defense. A pretrial hearing was held on July 17, 2024, at which time trial was set for August 7, 2024. On August 7, Harley entered a plea to the one count of corrupting another with drugs and the remaining three counts (i.e., involuntary manslaughter, endangering children, and having weapons while under disability) were dismissed.

**{¶ 5}** Harley appeared for sentencing in September 2024, and informed the trial court that he wished to withdraw his guilty plea. He explained his request as follows:

> I wasn't prepared when I came in last time I was here. I was told I was getting a three-year sentence. I came in. You read off everything that let me know that I was being sentenced to three years or whatever based on corruption. Well, my point is I didn't see anything that made me believe that I was a part of it. I didn't see any proof of it.

Tr. 29.

**{¶ 6}** The trial court granted Harley's request to withdraw his guilty plea over the State's opposition. Defense counsel then asked to withdraw his representation of Harley, stating that he and Harley did not "see eye to eye with respect to the case." *Id.* at 34. New counsel was appointed for Harley, and the matter was set for trial for November 20, 2024. Numerous pretrials between September 2024 and the November 2024 trial date were set and continued at the defense's behest.

**{¶ 7}** On November 19, 2024, the day before trial, the trial court held a final pretrial. The State indicated that its previous offer was still in effect. Defense counsel told the court that Harley wished to go to trial. The trial court explained the sole charge and possible penalties if Harley accepted the plea offer, as well as the charges and possibilities if he went to trial and was found guilty under all the counts of the indictment. When the trial court questioned Harley as to whether he wanted to plead guilty or go to trial, he responded as follows:

> I spoke to my counsel. I asked my counsel is it possible to put on the record that I want to change the venue due to I feel that I am not being heard or I feel intimidated here. I also feel that you will be biased

towards my case because of what you said and you feel I would do time no matter what. Also, that I haven't seen my counsel and had a chance to go over none of my information . . . until today. I still haven't seen this and I'm not prepared for trial tomorrow.

. . . .

[H]ow can I go to trial when I'm not prepared for trial? I haven't been briefed on anything.

Tr. 40-41.

{¶ 8} Defense counsel responded as follows:

I just want to put on the record, your Honor, we've met multiple times. He's asked about his . . . discovery, which he already had from the prior lawyer. We've gone over that. He's heard the audio stuff that we have. We've talked about that multiple times. So he has been provided with the discovery.

*Id.* at 41.

{¶ 9} The trial court denied Harley's request for a change of venue and told him that the matter would not be continued and the case would go to trial the following day. The following day, November 20, 2024, Harley appeared and indicated that he wished to plead guilty to the State's offer. The trial court engaged in a Crim.R. 11 plea colloquy with Harley, who indicated that he understood all the rights he would be waiving by entering a guilty plea as well as the potential consequences of entering a guilty plea. Harley also stated that he did not have any questions about the plea. The trial court then asked Harley, "Knowing all that sir, how do you plead to corrupting another, felony of the second degree . . . guilty or not

guilty?" Harley responded, "Guilty." *Id.* at 54. The trial court accepted the plea and dismissed the remaining counts.[1]

{¶ 10} At sentencing, Harley expressed remorse to Charles's family, but stated he "wasn't part of it, but [he was] taking responsibility because [he had] no choice." *Id.* at 61. The trial court sentenced Harley to a four-to-six-year prison term. Harley now appeals and raises the following two assignments of error for our review:

> I. Appellant was deprived of his right to due process and effective assistance of counsel under the Sixth Amendment to the United States Constitution and Art. I §10 of the Ohio Constitution.

> II. The trial court erred by accepting Appellant's guilty plea because it was not knowingly, intelligently, or voluntarily made.

**Law and Analysis**

{¶ 11} In Harley's first assignment of error, he contends that his trial counsel was ineffective for failing to file a motion to dismiss on the ground that his statutory speedy-trial time had expired prior to his plea. In his second assignment of error, Harley contends that the trial court erred in accepting his guilty plea because it was not knowingly, intelligently, or voluntarily made.

{¶ 12} We begin by noting that a guilty plea is a complete admission of the defendant's guilt. *See* Crim.R. 11(B)(1). As such, it has been held that "a guilty plea represents a break in the chain of events that precede it in the criminal process." *State v. Spates*, 64 Ohio St.3d 269, 272 (1992). Thus, when a defendant enters a

---

[1] The codefendant, Angela Miserendino, entered a guilty plea to one count of attempted corrupting another with drugs, a felony of the third degree.

guilty plea he or she waives all appealable errors that might have occurred unless the errors precluded him or her from entering a knowing, voluntary, and intelligent plea. *State v. Robinson*, 2020-Ohio-98, ¶ 6 (8th Dist.), citing *State v. Kelley*, 57 Ohio St.3d 127 (1991), and *State v. Barnett*, 73 Ohio App.3d 244 (2d Dist. 1991). A guilty plea even waives the right to claim that a defendant was prejudiced by the ineffective assistance of counsel, except to the extent that the ineffective assistance of counsel caused the defendant's plea to be less than knowing, intelligent, and voluntary. *State v. Williams*, 2014-Ohio-3415, ¶ 11 (8th Dist.), citing *Spates* at *id*.

{¶ 13} Likewise, a guilty plea generally waives a defendant's right to challenge his or her conviction on statutory speedy-trial grounds. *State v. Kelley*, 57 Ohio St.3d 127 (1991), paragraph one of the syllabus; *Montpelier v. Greeno*, 25 Ohio St.3d 170, 172 (1986); *State v. Yonkings*, 2013-Ohio-1890, ¶ 14-15 (8th Dist.); *State v. Goodwin*, 2010-Ohio-1210, ¶ 10 (8th Dist.). Thus, when a defendant pleads guilty, he or she also generally waives the right to claim that his or her counsel was ineffective based upon statutory speedy-trial issues. *State v. Logan*, 2014-Ohio-816, ¶ 20 (8th Dist.), citing *State v. Bohanon*, 2013-Ohio-261, ¶ 8 (8th Dist.).

{¶ 14} In order to establish a claim of ineffective assistance of counsel, the defendant must show that his or her trial counsel's performance was deficient in some aspect of his or her representation and that the deficiency prejudiced his or her defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Pursuant to *Strickland*, our assessment of an attorney's representation must be highly deferential, and we are to indulge "a strong presumption that counsel's conduct falls

within the range of reasonable professional assistance." *Id*. at 689. In Ohio, every properly licensed attorney is presumed to be competent and, therefore, a defendant claiming ineffective assistance of counsel bears the burden of proof. *State v. Smith*, 17 Ohio St.3d 98, 100 (1985).

{¶ 15} In the context of a guilty plea, prejudice is shown only if the defendant can demonstrate that there is a reasonable probability that, but for counsel's deficient performance, he or she would not have pleaded guilty. *Williams*, 2014-Ohio-3415, at ¶ 11, citing *State v. Xie*, 62 Ohio St.3d 521 (1992) and *Hill v. Lockhart*, 474 U.S. 52 (1985). In sum, a claim of ineffective assistance of counsel is waived by a guilty plea, unless the ineffective assistance of counsel precluded the defendant from knowingly, intelligently, and voluntarily entering a guilty plea. *State v. Geraci*, 2015-Ohio-2699, ¶ 14 (8th Dist.).

{¶ 16} Regarding Harley's claim that his statutory speedy-trial time had expired at the time of his plea, under R.C. 2945.71(C)(2), "the state is required to bring a defendant to trial on felony charges within 270 days of arrest." *State v. Martin*, 2018-Ohio-1843, ¶ 43 (8th Dist.), citing *Geraci* at ¶ 19. However, if a defendant is held in jail in lieu of bail, then the "triple-count provision" set forth in R.C. 2945.71(E) applies. The triple-count provision provides that each day a defendant is held in jail in lieu of bail counts as three days for purposes of calculating speedy-trial time; thus, a jailed defendant must be brought to trial within 90 days of arrest. *Geraci* at *id*. R.C. 2945.72 provides that speedy-trial time may be tolled by

certain events, including a defendant's request for continuances and any actions or neglect of the defendant that causes delay.

{¶ 17} The record here demonstrates that Harley was arrested on January 19, 2024, and remained in jail throughout the case. The triple-count provision applied therefore, and the State had to bring Harley to trial in 90 days. Harley's guilty plea (the second one) was made on November 20, 2024. Thus, from Harley's arrest date to his guilty plea, 306 days elapsed. The record demonstrates that time was tolled, however, for a significant period throughout the case.

{¶ 18} After Harley's arrest on January 19, 2024, the defense filed a motion for discovery on January 25, 2024; the State responded to the discovery request on February 2, 2024, and sought discovery from Harley on that same date. Thus, from January 25, 2025, through February 2, 2024, nine days were tolled.

{¶ 19} A pretrial scheduled for February 5, 2024, was continued at Harley's behest and rescheduled for February 21, 2024 — 17 days were tolled for the continuance. The February 21, 2024 pretrial was continued at Harley's request and reset for March 6, 2024, which resulted in 14 days being tolled. The March 6, 2024 pretrial was continued at Harley's request and reset for March 27, 2024, tolling 21 days.

{¶ 20} Continuances at Harley's request continued until the time he entered his first guilty plea in August 2024 as follows: the March 27, 2024 pretrial was continued until April 11, 2024, tolling 16 days; the pretrial set for April 11, 2024, was continued until May 1, 2024, accounting for 20 tolled days; the May 1, 2024 pretrial

was continued until May 14, 2024, tolling 13 days; the May 14, 2024 pretrial was continued until May 29, 2024, which tolled 15 days; the May 29, 2024 pretrial was rescheduled for June 12, 2024, accounting for 14 tolled days; the June 12, 2024 pretrial was continued until June 27, 2024, which tolled time for 15 days; the June 27, 2024 pretrial was reset for July 11, 2024, accounting for 14 days tolled; the July 11, 2024 pretrial was reset for July 16, 2024, which tolled the time for five days; and time was tolled for one day, when the July 16, 2024 pretrial was rescheduled for the following day, July 17, 2024.

{¶ 21} The July 17, 2024 pretrial was held, and trial was set for August 7, 2024. On August 7, 2024, Harley entered his first guilty plea. In accordance with the tolling events detailed above, from the time of Harley's arrest on January 19, 2024, until the time of his first plea on August 7, 2024, 174 days were tolled. Sentencing was set for August 18, 2024. The docket indicates that "for good cause shown, sentencing previously set for 08/19/2024 . . . is reset for 09/10/2024 . . . ." Thus, from August 8, 2024, through September 10, 2024, time was tolled for 34 days.

{¶ 22} On the date set for sentencing, September 10, 2024, Harley requested withdrawal of his guilty plea and the trial court granted his request. Harley's counsel also sought to withdraw, which the trial court granted and appointed new counsel that same day. The following day, September 11, 2024, newly appointed counsel filed a motion for discovery. The State provided supplemental discovery to counsel

on November 8, 2024.  Therefore, time was tolled for 58 days — from September 11, 2024 through November 8, 2024 — for discovery.

{¶ 23} Meanwhile, a final pretrial date was set for November 13, 2024, and a new trial date was set for November 20, 2024.  Harley requested a one-day continuance — until November 14, 2024 — of the final pretrial date, tolling the time for one day.  The November 14, 2024 final pretrial was continued at Harley's request until November 18, 2024, thus tolling the time for five days.  Harley's last request for a continuance of the final pretrial was also granted — the November 18, 2024 date was continued for one day, until November 19, 2024, which resulted in a one-day tolling event.  Harley entered his plea on November 20, 2024.

{¶ 24} When all the tolling events are added together, there were a total of 273 days tolled.  Harley was held in jail for a total of 306 days.  Because of the tolling events, only 33 days counted for the purpose of speedy trial (306 minus 273 equals 33).  Harley was brought to trial well within the 90-day speedy-trial requirement.

{¶ 25} Moreover, throughout the pendency of the case, Harley never responded to the State's discovery request.  In *State v. Palmer*, 2007-Ohio-374, the Ohio Supreme Court held that "[t]he failure of a criminal defendant to respond within a reasonable time to a prosecution request for reciprocal discovery constitutes neglect that tolls the running of speedy-trial time pursuant to R.C. 2945.72(D)."  *Id.* at paragraph one of the syllabus.  A defendant's failure to respond to the State's reciprocal discovery request tolls the statutory speedy-trial

clock regardless of whether the State files a motion to compel. *Id.* at paragraph two of the syllabus; *accord State v. Garner*, 2016-Ohio-2623, ¶ 27 (8th Dist.).

{¶ 26} This court applied the *Palmer* rationale in *Geraci*, 2015-Ohio-2699 (8th Dist.), as follows:

> Under *Palmer*, it is the period of time that constitutes neglect by the defendant, i.e., the period of time after the reasonable response time, not the period of time that constitutes the reasonable response time itself, that is properly tolled. *Palmer* at ¶ 23 . . . . This is consistent with R.C. 2945.72(D), which provides that "[t]he time within which an accused must be brought . . . in the case of felony, to preliminary hearing and trial, may be extended [by] . . . [a]ny period of delay occasioned by the neglect or improper act of the accused." Thus, where a defendant fails to respond to the state's request for reciprocal discovery, speedy-trial time is tolled after a "reasonable time" for the defendant's responses has passed.
>
> Under most circumstances, this court has generally considered 30 days to be a "reasonable" response time when applying R.C. 2945.72.

(Citations omitted.) *Geraci* at ¶ 25-26.

{¶ 27} Using the 30-day reasonable response time, Harley's speedy-trial time was indefinitely tolled beginning on March 3, 2024 — 30 days after the State filed its demand for discovery — based on the defense's negligent failure to respond to the State's reciprocal discovery request.

{¶ 28} On this record, Harley was brought to trial well within the 90-day requirement — his statutory speedy-trial rights were not violated. The first assignment of error is overruled.

{¶ 29} Regarding the nature of Harley's guilty plea, he contends that it was not knowingly, intelligently, and voluntarily made because he was not informed of

his speedy-trial rights and because of judicial bias and intimidation. As discussed, there was no speedy-trial violation and hence Harley's plea cannot be invalidated on that ground. The record also does not support Harley's claim of judicial bias and intimidation.

{¶ 30} Although a trial judge's participation in the plea-bargaining process is not prohibited under Crim.R. 11, the Ohio Supreme Court has cautioned that "the judge's position in the criminal justice system presents a great potential for coerced guilty pleas and can easily compromise the impartial position a trial judge should assume." *State v. Byrd*, 63 Ohio St.2d 288, 292 (1980). Thus, judicial participation in the plea process is strongly discouraged but does not render a plea per se involuntary. The ultimate inquiry is whether the judge's active conduct could have led the defendant to believe he or she could not get a fair trial, including a fair sentence after trial and whether the judicial participation undermined the voluntariness of the plea. *State v. Sawyer*, 2009-Ohio-3097, ¶ 54 (1st Dist.), citing *Byrd* at 293.

{¶ 31} "A trial judge's participation in the plea[-]bargaining process must be carefully scrutinized to determine if the judge's intervention affected the voluntariness of the defendant's guilty plea." *Byrd* at *id.* A judge's comments must not be considered in isolation, however; instead, we consider the record in its entirety to determine the voluntariness of the guilty plea. *State v. Jabbaar*, 2013-Ohio-1655, ¶ 29 (8th Dist.), citing *State v. Finroy*, 2010-Ohio-2067, ¶ 7 (10th Dist.).

{¶ 32} A review of the record does not support Harley's claim of judicial bias or intimidation. The trial court allowed Harley to withdraw his first guilty plea, and it was not until the court stated that the matter was not going to be continued anymore when Harley first raised his claim of judicial bias or intimidation. Harley did not cite to any specific statement or conduct by the trial court judge in support of his claim, however. Moreover, during the plea colloquy Harley indicated that he had neither been promised anything in exchange for his guilty plea nor threatened in any way to induce him to enter it. Harley's claims at sentencing that he "wasn't part of it" and that he took responsibility because he had "no choice" do not demonstrate judicial bias or intimidation. Tr. 61-62. Those statements merely reflected Harley's assessment of his likelihood of success at trial. Indeed, Harley explained what taking responsibility because he had "no choice" meant to him: "when I say I have no choice [it is] because everything is pointing at me . . . ." *Id.* at 61.

{¶ 33} The record demonstrates that Harley entered his guilty plea knowingly, intelligently, and voluntarily after the trial court engaged in a thorough Crim.R. 11 plea colloquy with him. The second assignment of error is overruled.

{¶ 34} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's

conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MICHAEL JOHN RYAN, JUDGE

LISA B. FORBES, P.J., and
EMANUELLA D. GROVES, J., CONCUR